**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **POPSOCKETS LLC** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MOUS PRODUCTS LTD.,** | ) | |
| Defendant. | ) | |
| | ) | Case No. |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | (Lead Case) |
| | ) | |

---

**COMPLAINT**

---

1.     Plaintiff PopSockets LLC ("PopSockets"), by its undersigned counsel, brings this Complaint against Defendant Mous Products Ltd. ("Mous") for infringement of U.S. Patent Nos. 11,989,058 ("the '058 Patent," Exhibit 1) and 11,899,496 ("the '496 Patent," Exhibit 2).

**I.    THE PARTIES**

2.     Plaintiff PopSockets LLC is a company established in Colorado having its principal place of business at 5757 Central Avenue, Boulder, Colorado, 80301.

3.     On information and belief, Mous is a limited liability company formed under the laws of the United Kingdom with a place of business at New Kings Court, Tollgate, Chandler's Ford, Eastleigh, Hampshire, SO53 3LG, United Kingdom. Mous may be served with process through the New Jersey Department of Treasury at 33 West State Street, 5th Floor, Trenton, NJ 08608.

4.     On information and belief, Defendant has used, sold, or offered to sell products and services, including the Accused Instrumentalities, in this judicial district.

## II.    **JURISDICTION AND VENUE**

5.    Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq.*).

6.    Mous is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

7.    Personal jurisdiction exists generally over Mous because Mous has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Eastern District of Texas. Personal jurisdiction also exists over Mous because it, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, makes available, and/or markets products within the State of Texas and the Eastern District of Texas that infringe one or more claims of the Patents-in-Suit.  Further, on information and belief, Mous has placed or contributed to placing infringing products into the stream of commerce, both directly and through intermediaries (including distributors, retailers, authorized dealers, sales agents, and other individuals or entities), knowing or understanding that such products would be sold and used in the United States, including in this District.

8.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b). Venue is proper in this Court because Mous is organized under the laws of a foreign jurisdiction. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." *See also In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018). Venue is also proper in this Court because Mous has committed acts of infringement in this judicial district.

### III.    FACTUAL ALLEGATIONS

####     A.    Background

9.    PopSockets is one of the nation's leading providers of phone cases, grips, and mount accessories for handheld electronic devices as well as the exclusive provider of award-winning and innovative POPSOCKET brand products and its products are sold in stores and online throughout the country.

####     B.    The '058 Patent

10.    The '058 Patent is entitled "Docking Accessory Platform for Mobile Electronic Devices."

11.    Claim 1 of the '058 Patent provides:

**[1pre]** A docking accessory platform adapted to couple to a mobile electronic device, the platform comprising:

**[1a]** a first docking connector portion comprising a first magnetic element configured to detachably attach to a second docking connector portion of a power accessory, wherein the second docking connector portion comprises a second magnetic element;

**[1b]** a back portion opposite the first docking connector portion, the back portion configured to be secured against a back surface of the mobile electronic device;

**[1c]** and a side portion configured to extend around at least a portion of a side of the mobile electronic device adjacent to the back surface, wherein the power accessory comprises an accessory body and an electronic assembly within the accessory body, wherein the electronic assembly comprising a battery and electronics operable to wirelessly transfer power through the platform, between the battery and the mobile electronic devices;

**[1d]** and the first docking connector portion of the platform is further configured to detachably attach to a grip accessory comprising a third magnetic element.

12.    PopSockets owns by assignment the entire right, title, and interest in and to the '085 Patent.  The '058 Patent was filed as Application No. 18/388,182 on November 8, 2023 and assigned to PopSockets. The '058 Patent issued on May 21, 2024 and claims priority to, among

others, U.S. Application No. 15/852,518, filed on Dec. 22, 2017, Application No. 14/588,402, filed on Dec. 31, 2014 (now Pat. No. 10,019,034), Application No. 15/173,644, filed on June 14, 2016, Application No. 14/384,663, filed as Application No. PCT/US2013/030911 on Mar. 13, 2013 (now Pat. No. 9,367,090), as well as Provisional Application No. 61/922,294, filed on Dec. 31, 2013 and Provisional Application No. 61/610,575, filed on  Mar. 14, 2012.

13.    The '058 Patent is generally directed at a docking platform for mobile devices that allows different types of docking accessories to independently attach and detach from the device "with at most a nominal increase in the effective magnitude of any one dimension of the mobile device." Ex. 1 at 3:15-26. The '058 Patent explains that docking platforms for mobile devices have traditionally been housed on the edges of mobile devices; however, "[a] shortfall of housing a docking connector on the edge of a mobile electronic device is that when the device is attached to docking accessories, the resultant system is generally inconvenient for transport." Ex. 1 at 1:46-49. Previous solutions have included, for example, building docking accessories into docking platforms, and securing the entire system onto the back of the device. *Id.* 1:66-3:11. While these solutions have made transport slightly more convenient, they have still increased the effective size of the device in multiple dimensions. *Id.* The docking platform disclosed by the '058 Patent attaches to the back face of the phone, and allows certain kinds of accessories to detachably attach to the platform while it is coupled to the device, for example, through magnetic elements.

14.    Figure 8 illustrates an example of a docking accessory platform with the platform configured as a case attached to the mobile electronic device, with two grip accessories detachably attached to the platform:



FIG. 8

'058 Patent., Figure 8. As shown, Figure 8 depicts an embodiment with docking platform 2 coupled to a mobile device 1. As the '058 explains, "[o]ne or more embodiments of the present invention are directed to a docking platform system comprising a docking platform and compatible electronic and/or mechanical docking accessories, the docking platform configured to detachably attach to a mobile electronic device and further configured to enable detachable attachment of a variety of docking accessories." Ex. 1 at 16:52-59. The docking platform disclosed by the '058 Patent thus allows for the docking of different kinds of accessories, including, for example, power accessories and grip accessories.

**C.    The '496 Patent**

15.    The '496 Patent is entitled "Docking Connector Platform for Mobile Electronic Devices"

16.    Claim 1 of the '496 Patent provides:

**[1pre]** A detachable docking accessory system, comprising:

**[1a]** a mobile electronic device;

**[1b]** a platform adapted to couple to the mobile electronic device, the platform including a first docking connector portion and a back portion opposite the first docking connector

portion, the back portion configured to attach to a [b]ack[1] surface of the mobile electronic device;

**[1c]** a power docking accessory comprising an accessory body;

**[1d]** a second docking connector portion of the accessory body, the first and second docking connector portions configured to form a detachable attachment to secure the accessory body to the platform; and;

**[1e]** an electronic assembly within the accessory body, the electronic assembly comprising electronics operable to inductively transfer power between the accessory body and the mobile electronic device.

17.     PopSockets owns by assignment the entire right, title, and interest in and to the '496 Patent.  The '496 Patent was filed as Application No. 18/202,847 on May 26, 2023 and assigned to PopSockets. The '496 Patent issued on February 13, 2024 and claims priority to, among others, U.S. Application No. No. 16/745,226, filed on Jan. 16, 2020, Application No. No. 15/723,506, filed on Oct. 3, 2017 (now Pat. No. 10,571,964), Application No. 14/302,203, filed on Jun. 11, 2014 (now Pat. No. 9,804,636). The '496 Patent claims partial priority to Application No. PCT/US2013/030991, filed on Mar. 13, 2013.  as well as Provisional Application No. 61/833,634, filed on Jun. 11, 2013, and Provisional Application No. 61/610,575, filed on Mar. 14, 2012.

18.     The '496 Patent is generally directed to a detachable docking accessory system for mobile phones. Figure 29 shows a variety of different embodiments of the claimed system including a docking platform 102 "configured for flush mounting an accessory to the back surface of mobile electronic device 101" (Ex. 2, 25:35-45; Fig. 29):

---

[1] *See* Ex. 3, Notice of Correction



FIG. 29

As explained by the '496 Patent, "The docking platform enables docking accessories to attach to the mobile device without significantly increasing the effective carrying size of the mobile device by enabling the volumes of attached docking accessories to be distributed across a large portion of the selected surface." Ex. 2 10:20-24. The claimed system allows for the flush mounting of docking accessories, including accessories "configured to electrically connect to the mobile electronic device." Ex. 2, 12:9-16. For example, FIG. 12A shows an embodiment wherein a mobile electronic device is connected with a docked supplemental battery accessory:



FIG. 12A

Similarly, Fig. 34 shows "an exemplary battery function 254 performed by docking platform 2, 102 or mobile electronic device 101. After docking platform 2, 102 or mobile electronic device 1, 101 establishes communications with supplemental battery accessory 146, docking platform 2, 102 or mobile electronic device 1, 101 may display battery function 254." Ex. 2 at 26:64-27:3; FIG. 34:



FIG. 34

### D.     Mous' Infringing Activities

19.     Mous is a competitor of PopSockets based in the United Kingdom.  Mous develops, manufactures, sells, offers to sell, and imports into the United States various phone accessories for smartphones such as iPhones, Samsung Galaxy, and Google Pixel phones.

20.     On information and belief, Mous makes, uses, sells, offers to sell, and/or imports within this District and elsewhere in the United States, without authority, smartphone cases that infringe one or more of the asserted patents (the "Accused Phone Case Products"). The Accused Phone Case Products include, without limitation, any Mous MagSafe ®/Qi2 compatible phone case made, used, sold and/or imported into the United States by Mous. By way of non-limiting example, the Accused Phone Case Products include the "Limitless," "Clarity," "Intralock," "Super Thin" and "Infinity" lines of MagSafe® cases currently and/or previously sold by Mous.

21.     On information and belief, Mous makes, uses, offers to sell, and/or imports within this District and elsewhere in the United States, without authority, smartphone power accessories that infringe one or more of the asserted patents (the "Accused Charging Products"). The Accused Charging Products include, without limitation, any Mous MagSafe®/Qi2 compatible phone charger made, used, sold and/or imported into the United States by Mous. By way of non-limiting example, the Accused Charging Products include Mous Wireless Charging Stand, Wireless Charging Car Vent Clip, Wireless Charging Suction Mount, Matte Black Wireless Charger, and MagSafe ® Compatible Wireless Power Bank sold by Mous.

## IV.     FIRST CLAIM FOR RELIEF – '058 Patent

22.     PopSockets re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

23.     On information and belief, Mous directly infringed (literally and/or under the doctrine of equivalents) and is currently infringing at least one of the claims of the '058 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Phone Case Products, and other products with materially the same structure in relevant part.  For example, and as shown below, the Accused Phone Case Products and other products with materially the same structure and operating mechanisms in relevant part infringe at least Claim 1 of the '058 Patent. Mous' Clarity MagSafe phone case for use with the iPhone 17 is an exemplary accused product.

24.     To the extent the preamble is limiting, the Accused Phone Case Products are docking accessory platforms adapted to couple to a mobile electronic device.  On information and belief, the Accused Phone Case Products are designed to couple to mobile electronic devices such as iPhones, Samsung Galaxy phones, and Google Pixel phones. The products comprise a first

docking connector portion comprising a first magnetic element configured to detachably attach to second docking connector portion of a power accessory, wherein the second docking connector portion comprises a second magnetic element. For example, Mous advertises that its Clarity Phone Case has a "magnetic case design." *See, e.g.,* https://www.mous.co/products/clarity-protective-phone-case-magsafe-stone?variant=41000323153978:



As seen above, the product is configured to detachably attach to a power accessory. The specifications of the product state that it contains an integrated magnetic array and is compatible with Mous magnetic chargers:

**Specifications**  ⌃

**Dimensions:** L 155.4 × W 77.5 × H 13.9mm
**Weight:** 42g
**Compatibility:** Integrated magnetic array supports Qi2 and MagSafe®.
Compatible with Mous magnetic chargers and accessories

25.  On information and belief, the Accused Phone Case Products comprise a back portion opposite the first docking connector portion, the back portion to be secured against a back surface of the mobile electronic device. The first docking connector portion of the Accused Phone Case Products is configured to secure against the back surface of the device (*id.*):



As pictured above, the Accused Phone Case Products also comprise a side portion configured to extend around at least a portion of a side of the mobile electronic device adjacent to the back surface.

26.     As shown above, the Accused Phone Case Products are configured to detachably attach to a second docking connector portion of a power accessory. The Accused Phone Case Products can detachably attach to a power accessory comprising an accessory body and an electronic assembly within the accessory body, wherein the electronic assembly comprises a battery and electronics operable to wirelessly transfer power through the platform, between the battery and the mobile electronic device. For example, Mous has sold a Power Bank accessory which "magnetically connects to the back of your MagSafe enabled phone or case" and is "compatible       with       Mous       MagSafe®       compatible       cases." *See* https://www.mous.co/products/magsafe-compatible-wireless-power-bank?variant=40178872451130. The power accessory is wireless, contains a battery with 6,000 mAh capacity, and can "[c]harge your phone on the go." *Id.*

27.     On information and belief the first docking connector portion of the Accused Phone Case Products is further configured to detachably attach to a grip accessory comprising a third magnetic element. Mous advertises a magnetic phone ring and stand grip accessory to bundle with the Accused Phone Case Products. *See, e.g.,* https://www.mous.co/products/clarity-protective-phone-case-magsafe-stone?variant=41000323153978:





As seen above, the magnetic phone ring and stand is a grip accessory providing a "secure grip" for the device, and attaches to the phone case via a magnetic element. The Accused Phone Case Products are configured to detachably attach to the pictured accessory and other grip accessories comprising a third magnetic element. *See also* https://www.youtube.com/watch?v=qqEYZfixT9M&t=45s:



28.     On information and belief, Mous also indirectly infringes the '058 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Mous' customers and end-users, in this District and elsewhere in the United States.  For example, on information and belief, Mous has induced, and currently induces, the infringement of the '058 Patent through its affirmative acts of selling, offering to sell, distributing, and/or otherwise making available the Accused Phone Case Products and other materially similar products that infringe the '058 Patent. On information and belief, Mous provides advertisements, tutorials, instruction manuals, and/or other materials that encourage and facilitate infringing use of the Accused Phone Case Products and other materially similar products by users in a manner that it knows or should have known would result in infringement and with the intent of inducing infringement. *See, e.g.,* https://www.youtube.com/watch?v=qqEYZfixT9M&t=45s. On information and belief, Mous is encouraging and facilitating infringement of the '058 Patent by others. For example, on information and belief, Mous sells or otherwise provides the Accused Phone Case Products to distributors or U.S.-based sales entities knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States and/or import the products into the United States in an infringing manner.

29.     On information and belief, Mous also indirectly infringes the '058 Patent, as provided in 35 U.S.C. § 271(c), contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  For example, on information and belief, Mous has contributed to, and currently contributes to, Mous' customers infringement of the '058 Patent through its affirmative acts of selling and offering to sell, either directly or through its distributors, in this District and elsewhere in the United States, the Accused Phone Case Products and other materially similar products that infringe the '058 Patent.  On information and belief, the Accused Phone Case Products and other materially similar products have no substantial noninfringing use, and constitute a material part of the patented invention.  On information and belief, Mous is aware that the product that includes the Accused Phone Case Products and other materially similar products may be covered by one or more claims of the '058 Patent. On information and belief, the use of the product that includes the Accused Phone Case Products and other materially similar products infringes at least one claim of the '058 Patent.

30.     Mous' infringement of the '058 Patent has damaged and will continue to damage PopSockets. Mous has had notice of the '058 Patent since at least the date of this Complaint, and on information and belief has had knowledge and/or notice of the '058 Patent earlier than this via PopSockets' website(s) and patent markings. Mous' infringement of the '058 Patent has been continuing and willful. Mous continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Mous knew or should have known that its actions constituted an unjustifiably high risk of infringement.

## V.    SECOND CLAIM FOR RELIEF – '496 Patent

31.     PopSockets re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

32.     On information and belief, Mous directly infringed (literally and/or under the doctrine of equivalents) and is currently infringing at least one claim of the '496 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Phone Case Products, the Accused Charging Products, and other products with materially the same structures in relevant parts.  For example, and as shown below, the Accused Phone Case Products, Accused Charging Products, and other products with materially the same structures in relevant parts infringe at least one claim of the '496 Patent.

33.     To the extent the preamble is limiting, the Accused Phone Case Products and Accused Charging Products are a detachable docking accessory system designed exclusively for use with a mobile electronic device. The Accused Phone Case Products are designed to attach to a mobile electronic device. The Accused Phone Case Products include a first docking connector portion, namely, a magnetic array built into the case. *See, e.g.,* https://www.mous.co/products/protective-clear-phone-case-magnetic-clarity ("Integrated magnetic array supports Qi2 and MagSafe®"). The Accused Phone Case Products also include a back portion opposite the magnetic array that is configured to attach to the back surface of the mobile device (*id.*):

 

34.     On information and belief, the Accused Charging Products comprise an accessory body and a second docking connector portion, namely, a magnetic array allowing them to detachably attach to the Accused Phone Case Products. *See, e.g.,* https://www.mous.co/products/magsafe-compatible-charging-suction-mount?variant=39460742692922 ("Compatible with iPhone 13 mini, 13, 13 Pro, 13 Pro Max, 12 mini, 12, 12 Pro and 12 Pro Max. Designed for use with Mous MagSafe® compatible cases"); https://www.mous.co/products/magsafe-compatible-charger-aramid_fibre ("Contains 24 perfectly-positioned N45 neodymium magnets to ensure a seamless alignment and a quick, efficient charge for your MagSafe-enabled phone every time… Our MagSafe Compatible Charger connects seamlessly with the Mous MagSafe Compatible range of cases.").

35.     On information and belief, the Accused Charging Products also comprise an electronic assembly within the accessory body comprising electronics operable to inductively transfer power between the products and the mobile device. For example, the Accused Charging Products are marketed as being able to wirelessly charge mobile devices while being connected to

the Accused Phone Case Products. *See, e.g.,* https://www.mous.co/products/magsafe-compatible-charger-aramid_fibre ("Contains 24 perfectly-positioned N45 neodymium magnets to ensure a seamless alignment and a quick, efficient charge for your MagSafe-enabled phone every time… Our MagSafe Compatible Charger connects seamlessly with the Mous MagSafe Compatible range of cases. There's no need to remove your Limitless 4.0 or Infinity cases for a seamless charge."); https://www.mous.co/products/magsafe-compatible-charging-suction-mount?variant=39460742692922 (accused product pictured transmitting a charge to mobile device):





.

36.    On information and belief, Mous sells both the Accused Charging Products and Accused Phone Case Products to end-users to combine with a mobile device to receive the benefit of Mous' products. On information and belief, Mous also sells the Accused Charging Products to end-users to combine with a mobile device and platform component provided by a third-party to receive the benefit of the Accused Charging Products. On information and belief, Mous also sells the Accused Phone Case Products to end-users to combine with a mobile device and power accessory component provided by a third-party to receive the benefit of the Accused Phone Case Products. On information and belief, Mous directs its end-users to combine the components together to use the claimed system. *See,* *e.g.,* https://www.youtube.com/watch?v=qqEYZfixT9M&t=45s; https://www.youtube.com/watch?v=j_IyWuJvilc; https://www.youtube.com/watch?v=R9DTGn0GKjQ.

37.    On information and belief, Mous also indirectly infringes the '496 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Mous' customers, in this District and elsewhere in the United States.  For example, on information and belief, Mous has induced, and currently induces, the infringement of the '496 Patent through its affirmative acts of selling, offering to sell, distributing, and/or otherwise making available the Accused Phone Case Products and the Accused Charging Products and other materially similar products that infringe the '496 Patent. On information and belief, Mous provides specifications, instruction manuals, tutorials, and/or other materials that encourage and facilitate infringing use of the accused Charging Products and other materially similar products by customers in a manner that it knows or should have known would result in infringement and with the intent of inducing infringement. *See,* *e.g.,* https://www.youtube.com/watch?v=qqEYZfixT9M&t=45s; https://www.youtube.com/watch?v=j_IyWuJvilc;

https://www.youtube.com/watch?v=R9DTGn0GKjQ.    On information and belief, Mous is encouraging and facilitating infringement of the '496 Patent by others.  For example, on information and belief, Mous sells the Accused Phone Case Products and the Accused Charging Products with the knowledge and intent that they will be used together with a mobile electronic device.  Mous suggests to customers that the Accused Products should be used together, and offers the option to "save" on one product when purchasing them together.  *See, e.g.,* https://www.mous.co/products/protective-clear-phone-case-magnetic-clarity?variant=40999660683322:



38.    On information and belief, Mous also indirectly infringes the '496 Patent, as provided in 35 U.S.C. § 271(c), contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States.  For example, on information and belief, Mous has contributed to, and currently contributes to, Mous' customers' infringement of the '496 Patent through its affirmative acts of selling and offering to sell, either directly or through

its distributors, in this District and elsewhere in the United States, the Accused Charging Products, Accused Phone Case Products, and other materially similar products that infringe the '496 Patent. On information and belief, the accused products and other materially similar products have no substantial noninfringing use, and constitute a material part of the patented invention. On information and belief, Mous is aware that the Accused Phone Case Products and Accused Charging Products have no use without a mobile electronic device. Mous markets the Accused Charging Products with images showing the products used as part of a system comprising a mobile device, case, and power accessory. *See, e.g.,* https://www.mous.co/products/magsafe-compatible-charger-aramid_fibre:



Mous is aware that the system that uses the accused products and other materially similar products may be covered by one or more claims of the '496 Patent.

39.    Mous' infringement of the '496 Patent has damaged and will continue to damage PopSockets. Mous has had notice of the '496 Patent since at least the date of this Complaint, and on information and belief has had knowledge and/or notice earlier than this via PopSockets' website(s) and patent markings. Mous' infringement of the '496 Patent has been continuing and willful. Mous continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Mous knew or should have known that its actions constituted an unjustifiably high risk of infringement.

## VI.    DEMAND FOR JURY TRIAL

40.    Pursuant to Federal Rule of Civil Procedure 38(b), PopSockets hereby demands a trial by jury on all issues triable to a jury.

## VII.    PRAYER FOR RELIEF

WHEREFORE, PopSockets respectfully requests that this Court enter judgment in its favor ordering, finding, declaring, and/or awarding PopSockets relief as follows:

A.    that Mous infringes the Patents-in-Suit;

B.    all equitable relief the Court deems just and proper as a result of Mous' infringement;

C.    an award of damages resulting from Mous' acts of infringement in accordance with 35 U.S.C. § 284;

D.    that Mous' infringement of the Patents-in-Suit is willful;

E.    enhanced damages pursuant to 35 U.S.C. § 284;

F.    that this is an exceptional case and awarding Mous its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.    an accounting for acts of infringement and supplemental damages, without limitation, prejudgment and post-judgment interest; and

H.    in the alternative to an award of damages under 35 U.S.C. § 284, an order pursuant to 35 U.S.C. § 283 permanently enjoining Mous, its distributors, officers, agents, servants, employees, attorneys, instrumentalities and those persons in privity, active concert or participation with them, from further acts of direct and/or indirect infringement of the Patents-in-Suit including the manufacture, sale, offer for sale, importation and use of the infringing products.

I.    such other equitable relief which may be requested and to which PopSockets is entitled.


Dated: January 30, 2026                                Respectfully submitted,

                                                       /s/  *Claire* Abernathy Henry

                                                       Ian Washburn (*pro hac vice* forthcoming)
                                                       iwashburn@irell.com
                                                       Andrew Strabone (*pro hac vice* forthcoming)
                                                       astrabone@irell.com
                                                       N. Isabella Chestney (*pro hac vice* forthcoming)
                                                       ichestney@irell.com

                                                       **IRELL & MANELLA LLP**
                                                       1800 Avenue of the Stars, Suite 900
                                                       Los Angeles, CA 90067
                                                       Tel. (310) 277-1010
                                                       Fax (310) 203-7199

                                                       Of Counsel:
                                                       Claire Abernathy Henry
                                                       State Bar No. 24053063
                                                       claire@millerfairhenry.com
                                                       Garrett Parish
                                                       SBN 24125824
                                                       garrett@millerfairhenry.com
                                                       **MILLER FAIR HENRY PLLC**
                                                       1507 Bill Owens Parkway
                                                       Longview, Texas 75604
                                                       (903) 757-6400 (telephone)
                                                       (903) 757-2323 (facsimile)


                                                       *Attorneys for Plaintiff PopSockets LLC*